Labatjve, J.
On the 17th May, 18G5, tho plaintiff leased to the defendant, Olympe Boisse, authorized by her husband, tho property No. 15G on Canal street, with alL the buildings, for a term of years, commencing on the 16th December, 1863, and ending on the 1st October, .1870, for tho annual rent of 3,500, payable monthly.
*27 The contract of lease contains an express clause, that “ the lessee shall make no-alterations without the written consent of the lessor. ” This suit is now brought to rescind the contract of lease, on the ground that the defendant has made alterations in the premises, by erecting a petition in the hall of the ground floor, without plaintiff’s consent and in violation of the contract of lease.
The defendant pleaded the general issue.
The District Court, after hearing the evidence, gave judgment for plaintiff.
The defendant took this appeal.
The substance of the testimony is as follows :
A. Castaing.—-I examined the house and saw the alterations (changements) made in the hall, lower floor. The hall, between one of the sides and the stairs, was closed with boards. A large portion of the stairs was closed from the floor to the ceiling, so as to divide the hall into two departments. This partition is nailed to the floor and stairs. Before these alterations were made, it was a hall from the front door to the yard ; it now forms two small apartments. This alteration prevents the current of air in the lower portion of the hall. This partition has not affected the dampness of the yard, but does affect the humidity of the hall.
This partition is “une petite nuisance pour le corridore pour le plancher”—the floor is not so well ventilated as heretofore.
Leon Oppermcmn.—I have examined the corridor of that house several times, and found a change in that corridor, consisting of a partition (clesion) made of tongued and grooved planks, and with a door, which forms a division making two apartments. This partition begins at the foot of the staircase and runs up to the ceiling. This partition has been sharped (taillé) so as to fit well into the cornice. This partition intercepts the current of air ; it makes it damper, and the floor will rot more rapidly. Before this partition was put there, it was a simple hall running from the street to the rear. With this partition there, the hall is formed into two small apartments—one used as a workshop of shoemaker. Before this partition was put there, there -was a small Venetian door at about three or four feet distant from the front door, which did not reach the ceiling, and did not intercept the circulation of the air.
There is a door to this passage way, which opens into the yard. If this door, leading into the yard, were kept constantly closed, it would not have the same effect of rotting the floor, as the partition; the air passes under the door.
James Qallier.—The partition is made of tongued and grooved ceiling, about seven-eighth or inch stuff; it follows, I think, the line of the steps ; it is made fast to the string of the stairs by nails. I observed that boarding where it joins the cornice has been carefully scribed to it so as not to break the plaster. I suppose that partition could be removed in two hours. I do not esteem that that partition is an injury to that house. I think that air will pass as well under the door of the partition as under the other leading into the yard. But the floor of the house is so close to the ground, in consequence of the elevation of the banquette since the house was built, that I do not think that the want of circulation would cause the floor to rot any faster.
*28 I suppose that a ground floor which is damp on the bottom and on the top, will sot quicker than one which is damp on the bottom and dry oc the top. If these inclosures do produce dampness above, then would the flooring rot at a quicker rate than if dry ; but it must be first proved that the dampness has beeu caused by the partition ; in this case the air will circulate under two doors as well as under one. This partition has the effect of shutting off a great quantity of air; it does on one side. That partition impedes the ventilation of the back part of the corridor. I think there are so many small outlets and cracks for air and ventilation, that complete stagnation of air under the stairs could not take place. The stagnation of air, with the partition there, is greater than it would be without the partition: the air has not the same circulation it would have were the partition removed. The effect of stagnation- of áir on flooring is to rot it, i£ the air is damp. Besides the door in the partition, there is a clear passage of air up the stairs into the yard. I should say that the ventilation, as it is now,-is sufficient.
B. M Hnrrod.—I saw the partition in the lower floor and examined it; its removal would be no injury to the building ; it might be removed without any injury. Ido not think that its presence there is any injury to the owner of the building or-materially affects the process of rotting the floor. This partition has a tendency to impede the circulation of the air; it shuts off a part of the light. If the passage of air and light depended upon that partition, I think the partition would have a tendency to create dampness; but I think there is sufficient air and light to prevent rot, with that partition there. This partition affects the appearance of the staircase ; it runs to the ceiling.
W. Witsel.—There is a good deal of circulation of air there, and I have not observed any dampness, and never had the partition door opened ; there is sufficient current of air without it; as the stairway turns to the second floor, there is a large door which allows plenty of light and air.
Jos. BvJdman.—I am the agent of Madame Olympe during her absence. That partition was put up on the lower floor somewhere between the latter part of February and beginning of March. I remember the fact of its being put up, and seeing plaintiff going into the house before the workmen finished the partition; he made no objection to it at tho time, that J know of. When I received a letter from plaintiff’s attorney, that was the first time I heard of his objections to the partition.- As far as my knowledge goes, that partition can be removed without auy damage to the house or the stairs. The work has been put up very lightly. Plaintiff came there one morning, when we had the cistern repaired, and it was at the same time this work or partition was in progress.
Auguste Garrón.—.T know this partition on the lower floor. Plaintiff' came there whilst it was being put up, and afterwards, and after it was put up; he never notified Madame Boisse to remove that partition.
Geo. Ghevallier.—I made that partition; it makes no injury to the building ; the only damage it would do to remove it, would be to buy a dime’s worth of putty to close the nail holes along the staircase. I, alone, could remove it in an hour.
The above testimony satisfies us, that the partition and alteration complained of belong to that class of changes and modifications that a les *29 see has the right to make, as being- of the nature of the contract of lease, when there is no stipulation to the contrary ; for we are of opinion that the exercise of that right may be restricted and modified, even entirely interdicted, in the lease. Duranton, vol. 17, Art. 97, says : “ that nothing prevents the lessee from making these light changes in the interior distribution of the house, if this right has not been interdicted in the lease. ”
Troplong, du Lounge, Art. 310, and Duvergier, Continuation de lordlier, vol. 18, Art. 398, are of the same opinion, and they both refer to Lepage, Lois des bátiments 2de partie, page 186, who says:
“Dy a dans une maison qui m’est louér, une grande chambre qui me serait plus comniode, si elle était divisée en deux par une cloison; quoique le bail me un donne pas le droit de faire cette nonvelle distribution, il suflit qu’il ne me le défende pas pour que j’y sois antorisé. Je pourrai done former une cloison en planches on en hriques posées sur leur champ on de toute autre maniere, qui ne charge pas les planehers. Pareillement il existe dans une autre chambre une alcove qui me gene, et le bail n’en parle ni pour m’obliger a la laisser subsister, ni pour m’autoriser á la déplacer. Le propriétaire serait mal fondé á m’empéeher de me satisfaire, si je peur enlever 1’alcove et la replacer en quittant, sans l’endommager et sans dégrader l’apparfcement. * *
There can be no doubt that the parties to a contract of lease may stipulate that the lessee shall make no change or alteration belonging to the nature of this contract, or without the consent of the lessor, who has the right to restrict the use and enjoyment of his property in the hands of the lessee.
This stipulation would become the law of the parties. Civil Code, Arts. 11, 1895.
We now come to the legal effect of the clause in the lease : “The said lessee agrees to make no alterations, without the written consent of the lessor, who reserves to himself the right of annulling this lease in case the said lessee should fail to pay the rent stipulated, or otherwise violate her contract.” On the trial of the case below, the defendant offered to prove by witnesses that, at the time the partition complained of was being erected, the plaintiff verbally consented to the same, and expressed his satisfaction with the manner in which the same was being made. But the Court refused to hear such proof, upon the ground that parol evidence was inadmissible under the written lease.
We are of opinion that the District Court decided correctly. The parties having stipulated that this consent should he expressed in writing, and no new agreement being alleged by defendant, virtually agreed that no other kind of proof should be received, otherwise the term “written” would have had no legal effect; and we must presume that the parties have used the expression for the purpose of restricting the evidence of consent to literal proof alone, as they had the right to do. Civil Code, Art. 1895.
The lessor, in subjecting the alterations to his written consent, is presumed to have had in view those changes and modifications belonging to the nature of the contract of lease, and which the lessee may make without the consent of the owner, and not those that the lessee is not authorized to make by law.- Duvergier, Continuation de Toullier, vol. 18,.Arts.-398, *30 399. Troplong, du Louage, Arts. 310, 311. This clause is clear, and leaves no room for interpretation, and must apply to the partition and changes complained of, and such like, otherwise it would he nugatory. Civil Code, Art. 1946.
The defendant has failed to produce a written consent to authorize the alteration complained of, and parol evidence offered to that effect having been rejected, there is no proof that this change was authorized ; hut two witnesses having testified that the plaintiff was at the house several times while this partition ivas being put up, and made no objection to it, defendant’s counsel contends that the plaintiff, by his silence and tacit approbation, gave his implied consent to the work, and he cannot now object to the same. We are of opinion that parol evidence having been offered to prove an express verbal assent, and rejected as inadmissible under the lease, we cannot now presume an implied consent. Were we to do so, we would contravene the text of Art. 2267 of the Civil Code, which refuses to the judge the discretion of presuming when parol evidence is not admissible; besides, the circumstance that the plaintiff was at the house several times while this partition was being put up, and made no objection to it, does not necessarily authorize the inference that he did not, at other times and elsewhere, make his objections to the defendant, who, nothing shows in the record, was present when the plaintiff went to the house; it is not, as commonly called, a negative pregnant with an affirmative, that he did give his consent. The presumption is not weighty, precise and consistent. O. O. Art. 2267. Presumptions are consequences which the law or the judge draws from a known fact to a fact unknown. O. O. Art. 2263. The fact known is that he was present at times when the defendant was not present; can we draw the consequence that he did not object at other times ? We cannot.
Upon the whole, wre are of opinion that the plaintiff has made out his case, and that our learned brother of the District Court has decided the contest correctly, and that his judgment must be affirmed.
It is therefore ordered and decreed, that the judgment appealed from be affirmed, at the cost of the defendant and appellant.